CASE 76—PETITION EQUITY—JAN. 29.

## Waller's Adm'x v. Marks, &c.

APPEAL FROM JESSAMINE CIRCUIT COURT.

1. CONTRACT TO ABANDON WILL CONTEST—PUBLIC POLICY—CHAMPERTY.—A contract between an heir at law of a testatrix and the legatees and devisees under the will, that in consideration of the abandonment by the former of a proposed contest of the will, the latter will pay to him the amount of a bequest which was intended to be given him by the will, but which was omitted by mistake of the draftsman, is not against public policy, and not in violation of the law against champerty and maintenance.

W. P. ROSS & SON FOR APPELLANT.

1. The courts always proceed with great caution in declaring contracts void as against public policy, and will so adjudge only in cases free from doubt. (Smith v. DeBose (Ga.), 6 Amer. St. Rep., 269;

Richmond v. Dubuque, 26 Ia., 190; Kellogg v. Larkin, 56 Amer.
Dec., 164; Swan v. Swan, 21 Fed. Rep; Richardson v. Melish, 2
Bing., 229; 9 Com. L., 557.)

2. The contract is not tainted with fraud or vice, and is not in dis-
regard of any law; upon the part of the decedent it was open and
fair. Appellees tied his hands by the agreement, and prevented
his resisting—probably successfully—the probate of the will, and
attempt to evade the contract after he has performed his part of
it.

JOHN W. YERKES FOR APPELLEES.

1. Any agreement relating to proceedings in court, which involves
any act inconsistent with the full and impartial course of justice,
although not open to the charge of actual fraud, is against public
policy and void. (Tappan v. Albany Brewing Co., 80 Cal., 570;
(13 Amer. St. Rep., 174); Selz v. Unna, 6 Wallace, 327; Gray v.
McReynolds, 62 Iowa, 461 (54 Amer. Rep., 16); Young v. Evans,
8 Ky. L. R., 353; Thomas v. Caulkett, 57 Mich., 392 (58 Amer.
Rep., 369); Brookie v. Partwood, 84 Ky., 259.)

2. The contract was void and illegal because tainted with champerty
and maintenance. (Lucas v. Allen, 80 Ky., 681; Kentucky Stats.,
sec. 209; Brown v. Beauchamp, 5 Mon., 413; Story's Equity, secs.
294-296.)

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

Permelia Wilmore departed this life in Jessamine
county some years ago, having first made and pub-
lished her last will and testament, which was duly
probated. She had a considerable estate, and made
many legatees or devisees, being, as it appears, with-
out any descendant.

In May, 1893, Ora Wilmore and others brought suit
against the executor of the testatrix and devisees un-
der the will for a settlement and distribution of the es-
tate.

The appellant, Lucy E. Waller, administratrix of J.
K. Waller, appeared in court, and was permitted to
file her petition to be made a party to the suit, and

to have the same taken as her answer and also as her
cross petition against the appellees.   The answer and
cross petition is as follows:

"Lucy  E.  Waller,  administratrix  of  James  K.
Waller, deceased, states that said James K. Waller
departed this life intestate on the —— day ———,
189—, a resident and citizen, at the time of his death,
of Nicholas county, Ky.

"She was thereafter, on the —— day of ———,
189—, regularly and duly appointed and qualified ad-
ministratrix of the estate of said James K. Waller
(who was at his death her lawful husband) in and by
the Nicholas County Court.   Copy of letters of admin-
istration evidencing her said appointment and qualifi-
cation issued by the clerk of said county court are filed
herewith, marked 'A.'

"She says her said husband was an heir at law of said
Permelia Wilmore, and, as such heir at law, would
have been entitled under the law of descent and dis-
tribution of Kentucky, to a considerable portion of her
estate if she had died intestate.   This heirship and
consequent potential right of the said husband to a
share of said estate was recognized by the devisees and
legatees named in the will of said Permelia Wilmore
(which is set out in *hacc verba* in plaintiff's petition) at
the time it was exhibited and offered for probate in
the Jessamine County Court, and prior thereto, and it
was also well known to the said devisees and legatees
named in the will that it was the fixed purpose and in-
tention of said testatrix by her will to devise or be-

queath to her said husband money or property of her estate to the amount of two thousand dollars; and that purpose and intention was never abandoned, modified or changed in any respect by her, and it was equally as well known to and understood by said devisees and legatees from and continuously after the death of said testatrix that said provision in favor of her said husband was not embodied in and was omitted from the will by the excusable inadvertence of the draftsman of it.

"Soon after the death of the testatrix it was well known to the parties interested in said estate, by reason of declarations made by her said husband and his open, active efforts in resisting the probate of the will, in conjunction with others associated with him and interested in the estate and in defeating the proposed probate of the will that he was opposing its probate, all these facts being, as they were, well known to the defendants, W. H. Cook, Kate Cook, P. A. Marks, Nannie Marks and Mary Hill (nee Mary Hightower), and because of their knowledge of them, and a commendable disposition on their part to do justly by her husband, and thereby strengthen themselves as well as the propounders of the will, they did, on the 20th day of February, 1888, enter into a written contract with her husband, signed and delivered by them and her said husband (which said written contract is in possession of Benjamin P. Campbell, Esq., to whom it was left by the parties for safe keeping, and for this reason can not be filed herewith, but a copy of which is

filed by petitioner and made part of this pleading, marked 'B,' by which said writing, after reciting that said will had been presented to the Jessamine County Court for probate, and that said James K. Waller, one of the heirs at law of said Permelia Wilmore, was proposing to object to the recording of it, and that it was desirable on the part of the parties concerned to amicably settle any controversy which might arise in regard to the probate of the will), said defendants last hereinbefore named, devisees under the will, undertook and bound themselves 'to pay and cause to be paid to said James K. Waller two thousand dollars, out of the legacies 'bequeathed to them out of the estate of said Permelia Wilmore, so soon as the same is ready for distribution among the devisees,' and said defendants, parties to said agreement, by it authorized the executor named in the will to pay said sum of two thousand dollars out of their bequests respectively in proportion to their respective interests to said J. K. Waller, by which agreement said devisees and obligors heretofore herein named transferred and assigned said sum of two thousand dollars, and portions thereof respectively, to said James K. Waller, of which contract, agreement and transfer and assignment the defendant, L. C. Wagner, had notice at the time and ever since.

"Said James K. Waller by said contract undertook to and did withdraw all opposition to the probate of said will, and did until his death aid and assist in the probate of said will as he by said contract agreed to

do, and kept and performed in good faith all the covenants on his part of said agreement.

"By said will Mrs. Kate Cook acquired by devise 100 acres of land during her life, the home place of the testatrix, the value of which is unknown to this petitioner, also all the household goods and furniture not specifically bequeathed and at the date of the will in the dwelling house on said land, the value of which is also unknown to plaintiff in this petition.

"Said will bequeaths to said Nannie Marks $3,000 in cash for her sole and separate use, and free from debts and control of her husband, and also devised to John Marks, son of Nannie Marks, and her husband, Philip Marks, about 80 acres of land during his life, and at his death to his 'heirs,' or, if dying without 'heirs,' then to his brothers and sisters in fee. The value of said life estate is unknown to petitioner.

"It bequeaths to said W. H. Cook two horses, value not known to petitioner.

"It bequeaths to defendant, Mary Hill (at the date of contract Mary Hightower, she being then unmarried), $3,000.

"She says that eleven hundred dollars of said two thousand dollars was paid to said James K. Waller in his lifetime; by whom paid she has no knowledge or information sufficient to form a belief, but she has heard it was paid or remitted to her husband by the executor, L. C. Wagner, and probably on account of or out of interest of the Cooks.

"The remainder of said two thousand dollars, to-wit,

nine hundred dollars, remains wholly unpaid and there is more than a sufficient amount of the legacies in favor of said Cooks, Marks and Hill to pay said balance, prorating said balance between them in the hands of defendant Wagner, executor.

Wherefore she asks that she be made a party defendant to this action; that her petition be taken as a cross-petition against the defendants, Dr. L. C. Wagner, W. H. Cook, Kate Cook, Mary Hill, Philip Marks and Nannie Marks, and prays the court to adjudge the payment to her of said nine hundred dollars and interest thereon from the time it should have been paid agreeably to the terms of contract, and prays for all proper and general relief.

"ROSS & OWENS. Att'ys for Petitioners."

The appellees filed a demurrer to the answer, which was sustained by the court, with leave to amend. An amended answer and cross petition was filed and appellees' demurrer to it was also sustained, and appellant failing to plead further her petition, answer and cross petition, as amended, were dismissed; and from that judgment and from the order sustaining the demurrer this appeal is prosecuted.

The amended pleading contains only allegations showing appellant's intestate to have been one of the heirs of Permelia Wilmore, if she had died intestate, hence it is not copied herein.

The contract referred to in the petition, answer and cross petition is as follows:

"Whereas, The will of the late Mrs. Permelia Wilmore has been presented to the Jessamine County Court for probate; and, whereas, James K. Waller, one of the heirs at law, proposes to object to the recording of said will; and, whereas, it is desirable on the part of the parties concerned to amicably settle any controversy which may arise in regard to the probate of said will, it is agreed between Philip Marks and his wife, Nannie Marks, and William Cook and his wife, Kate Cook, and Mary Hightower, devisees of said Mrs. Permelia Wilmore, parties of the first part, and James K. Waller, party of the second part, that the parties of the first part agree and bind themselves to pay and cause to be paid to the party of the second part two thousand dollars out of the legacies bequeathed to them out of the estate of the said Parmelia Wilmore so soon as the same is ready for distribution among the devisees and they authorize the executor named in the will or the party who may qualify as the personal representative to pay said sum out of said bequest to the party of the second part, and the same is to be paid out of their respective shares in proportion to our interests.

"In consideration of the premises, the party of the second part agrees and binds himself to withdraw all opposition to the probation of said will and to aid and assist in the probation thereof.

"It is further agreed and understood by the parties hereto that if the probation of said will should be controverted by any other party and the probation there-

of should be rejected, then this agreement is to be null and void.

"Witness our hands this 20th day of February, 1888.

(Signed.)      "J. K. WALLER,

"W. H. COOK,

"P. A. MARKS,

"NANNIE MARKS,

"MARY HIGHTOWER,

"KATE COOK."

The first contention of appellees is that the contract sought to be enforced is contrary to public policy, and it seems to be assumed in the brief that the contract has a tendency to prevent the due administration of justice, and that it involves acts inconsistent with the full and impartial course of justice.

Numerous decisions of courts of States other than this State are cited in support of appellees' contention.

We deem it unnecessary to discuss these decisions. It may be conceded that they correctly state the law according to their several States applicable to the cases therein decided, but the case at bar is unlike the cases relied on by appellees.

It appears from the cross petition that it was well known that the testatrix had always intended to devise to appellant's intestate $2,000, and the omission to do so was caused by the mistake of the draftsman, and that but for the mistake $2,000 would have been devised to him; and further that if there had been

no will that he would have inherited at least that
much as heir at law.     It will be seen from the will
that the bequests were very numerous, and, therefore,
the claim of mistake of the draftsman was not all un-
reasonable.     Nor does it appear that appellant's intes-
tate was resisting or intending to resist the probating
of the will upon the same grounds which the other
contestants were relying upon.     Neither does it ap-
pear that the intestate agreed to do any wrong or even
to testify as a witness in the case.     It can hardly be
doubted but what a party has a legal right at any time
to dismiss his suit upon such terms as he may see fit,
and especially may he cease to contest a will, and un-
less there is some vicious agreement made as part oɪ
the consideration for his doing so we see no reason
why he may not enforce the agreement.

It seems to us to be well settled that a compromise
or surrender of an apparently equitable claim is a suf-
ficient consideration to support a promise to pay. · In
the case at bar the pleadings of appellant show a clear
case of an equitable claim if not a legal claim. The ap-
pellees' interest, it seems, was to some extent antago-
nistic to that of the intestate, and also opposed to the
supposed interest or claims of some others.   Now, to
avoid litigation or to lessen or narrow the same, the
contract in question is entered into by which, if appel-
lees succeed in obtaining the amounts which they were
contending for, they would pay to the intestate the
sum he was claiming; otherwise he would and did sur-
render his claim and also agreed to assist appellees in

the common object, viz., to secure that which they all believed was justly due them.   Moreover the presumption of law was that the will then in contest was the true will of the testatrix, and that presumption is fortified by the fact that two courts sustained the will.

Suppose that A and B were both claiming an interest in a tract of land, and had reasonable grounds to so claim, and that C and others were claiming the same land, no one being in possession, would not A have a right to contract with B to relinquish his claim and aid B in his contest with C and others upon the condition that if B succeed that B would convey 50 acres of the land to him (A)?

It seems clear to us that the contract in question is not in violation of public policy and does not tend to obstruct justice or hinder the proper enforcement of the law.

The second contention of appellees is that the contract is in violation of the laws against champerty and maintenance.

In support of that contention some decisions of this court are cited.   Lucas v. Allen, 80 Ky., 681, is not applicable to this case.   Lucas was an officer of the city of Louisville, and agreed to furnish information, etc., by which the payees could recover taxes illegally collected by the city, for which he was to have a certain portion of the money so recovered.   It was properly held that he could not enforce such a contract.

In Young v. Evans, 8 Ky. Law Rep., 353, a Superior Court decision, it appeared that a party had contract-

ed with the administratrix to cancel a debt he held on her if she would not file exceptions to a claim he had filed against her as administratrix of her daughter.

It was properly held in that case that the contract could not be enforced. The reason is obvious. It was an attempt by the creditor to hire the administratrix to omit a fiducial duty.

Brown v. Beauchamp, 5 Monroe, 413, is also cited by appellees. It will be seen from the opinion cited that Richardson had no interest in the suit, but agreed with one of the parties to aid them in the litigation, and if successful was to have part of the land in contest. The court held that such a contract was illegal and could not be enforced. The court said that "maintenance signifies an unlawful taking in hand and upholding of quarrels or sides to the disturbance or hindrance of common right, * * as where one assists another in his pretensions to certain lands, or stirs up quarrels and suits in the country in relation to matters wherein he is in no way concerned, or where one officiously intermeddles in a suit depending, which no way belongs to him by assisting either party with money or otherwise."

Champerty is the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute or some profit out of it.

It will be seen from the foregoing that the contract in question is not in violation of the law as to champerty and maintenance. It results from the foregoing views that the court below erred in sustaining the de-

murrers to appellant's answer and cross petition, and
to the same as amended.

The judgment appealed from is, therefore, reversed
and cause remanded, with directions to overrule the
demurrers and for proceedings consistent with this
opinion.