## Scott, et al. v. Wolford, et al.

(Decided October 17, 1912.)

### Appeal from Pike Circuit Court.

1. **Champerty and Maintenance—Contracts—Conveyances.**—All sales or conveyances of lands, at the time adversely held, or any interest therein, and all contracts to recover, by suit, such lands, or the profits thereof, in whole or in part, are prohibited by statute.

2. **Champerty and Maintenance—Pleading—Confession and Avoidance.**—The rescission in good faith, of a champertous contract in respect to land, if made during the pendency of a suit for its recovery, will not avoid the plea of champerty and maintenance; but if made before action is begun, will avoid such a plea.

J. S. CLINE for appellants.

ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Nehemiah Wolford, died, the owner of a certain farm on Peter Creek in Pike County, Kentucky, leaving surviving him, his widow and several infant children. His widow, Jane Wolford, sold this land to W. R. Wolford for $250 and made him a general warranty deed therefor. She took $225 of the purchase money and invested it in another tract of land, lying on Blackberry Creek in said county, to which she removed and upon which she lived until her death. Her children took and held title to the tract of land so purchased by her. Sometime following the death of their mother, the children of Nehemia Wolford brought suit to recover the farm on Peter Creek. L. W. Sowards, who was then the owner by purchase from W. R. Wolford, answered, admitting that Nehemiah Wolford had died the owner of the land, leaving the plaintiffs as his heirs, and Jane Wolford, his widow. He pleaded further that Jane Wolford had sold the land to W. R. Wolford and executed a general warranty deed therefor, although she owned but a dower interest in the land; that she had taken the money and invested it in the Blackberry Creek land, and she died the owner of this land; and that, it passed to and became the property of plaintiffs, as her heirs at law; and that by reason of that fact they were barred from recovering the Peter Creek tract of land, which was owned by their

father. He pleaded further that the Blackberry Creek tract of land was equal, in value, to the Peter Creek tract. In this answer W. R. Wolford joined. The case was transferred to equity and the affirmative matter in the answer was traversed. In an amended pleading, the plaintiffs asked that G. T. Hawkins and I. C. Barrett be made parties to the litigation, and tendered with this amended pleading a deed from Hawkins to plaintiffs, in which he had reinvested them with title to said land. It appears that some three or four weeks after the original suit had been brought, the children of Nehemiah Wolford had joined in a deed to Hawkins, in which they conveyed to him this land. In the amended pleading, they stated that a fraud had been practiced upon them, in the execution of said deed, and that, upon their demand that he do so, the said Hawkins had reconveyed the land to them. They asked that the deed from them to Hawkins and from Hawkins to them be adjudged fraudulent and void. They also, in a later amended petition, tendered to W. R. Wolford, a general warranty deed to the Blackberry Creek land, which their mother had bought with the money received from him for the Peter Creek tract. This deed Wolford declined to accept. All of the affirmative matter in the amended pleadings and answer was traversed, proof taken, and the case finally submitted for judgment. The chancellor being of opinion that plaintiffs were not entitled to the relief sought, dismissed their petition. They appeal. It is contended for appellees that the judgment of the lower court is correct and must be upheld on two grounds: First, that the suit was champertous, and that the chancellor, by the clear and abundant evidence in the record showing this fact, was justified in dismissing the petition; and second, that the judgment must be upheld upon the ground of equitable estoppel, based upon section 2352 of the Kentucky Statutes.

About three weeks after the institution of this suit, the plaintiffs sold and conveyed the land in litigation to their attorney, G. T. Hawkins; and the evidence shows that the contract of purchase and sale had really been entered into when the suit was filed. Section 210, Kentucky Statutes, provides:

"All sales or conveyances, * * * of any lands, or the pretended right or title to the same, of which any

other person, at the time of such sale or conveyance, has adverse possession, shall be null and void.''

Section 211, Kentucky Statutes, provides:

''All contracts to prosecute a suit for the recovery of any lands in the adverse possession of another, for the whole or part of the land thus possessed, or for the whole or any part of the profits thereof, shall be null and void, and the parties to such contract shall forfeit all right, interest or claim in or to the land claimed under such pretended right or title; also, all right to maintain any suit at law or in equity upon such pretended right or title, and such right, title, or claim shall vest in the Commonwealth, and inure to the benefit of the person in possession, without office found.''

Under the contract of sale in question, if the litigation was successful, the land was to be valued at $950, $150 of which was to be retained by Hawkins, as his fee, and the balance, $800, was to go to the plaintiffs. Plaintiffs were to be at no expense whatever, in the litigation, and, as between themselves and Hawkins, were not answerable for costs. Since the defendants were in the adverse possession of the land in controversy, the contract was clearly violative of the provisions of the statutes quoted. Counsel for plaintiffs concede this but contend that, inasmuch as Hawkins reconveyed the land to plaintiffs and they, in their pleading, repudiated the contract, alleging that it was obtained from them by fraud, they stand in the same position as though no conveyance had, in fact, been made. There might be much force in this argument as an original proposition, but this court, in Harman v. Brewster, 7 Bush, 355, and again in Luen v. Wilson, 85 Ky., 507, held just to the contrary. In the former opinion, the facts were identical with those in the case at bar. There, there had been a champertous sale, and, after the case had lingered in court for sometime, the champertous vendee reconveyed to the vendors, thus placing them in the position which they were before the conveyance was made. It was argued to the trial court, and with success, that this rescission had the effect of voiding the pleas of champerty and maintenance, and, upon appeal here, in disposing of the question, this court said:

''Had the parties in good faith abandoned the contract before the action was begun, we do not doubt but that it could have been maintained by the appellees; but

the proof is that it was not abandoned until 1866, and then only because the parties were advised that they could not possibly recover unless it was rescinded. It, therefore, follows that if the sale was made to Franks by S. E. Brewster with authority from the rest of the appellees, or if they ratified the same after it was made, or voluntarily become parties to the action, and permitted it to be prosecuted in their names for the purpose of effectuating said champertous sale, then the law was for the appellees, and the jury should have been so instructed. We do not agree that the rescission of the contract in 1866 can be made to relate back to the commencement of the action, and it was error to instruct the jury that said rescission, because made in good faith, was sufficient to take the action out of the purview of the statutes against champerty."

That opinion is conclusive of the question under consideration, and no doubt influenced the trial court in reaching the conclusion, which he did.

Judgment affirmed.