## W. C. BELCHER LAND MORTGAGE CO. et al. v. HAZARD COAL CORPORATION.

(Circuit Court of Appeals, Sixth Circuit. November 4, 1926.)

No. 4564.

**1. Contracts ⪧153.**

Contracts should not be construed to make them contrary to law or public policy, if other result can be reached by some reasonable construction.

**2. Champerty and maintenance ⪧4(2).**

Contract consolidating diverse interests in land and authorizing trustee to handle all matters connected therewith for percentage of capitalization of such consolidated interests *held* not forbidden by champerty statute (Ky. St. §§ 209–212).

**3. Parties ⪧52.**

Trustee of land interests, bringing ejectment suit under authority of Civ. Code Prac. Ky. § 21, *held* entitled to amend petition after demurrer was sustained, on ground trust instrument was champertous, to include as parties plaintiff grantors in trust instrument.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by the W. C. Belcher Land Mortgage Company, trustee, and others, against the Hazard Coal Corporation. Judgment of dismissal, and plaintiffs bring error. Reversed and remanded.

C. S. Arnold, of Whitesburg, Ky. (L. W. Fields, of Lexington, Ky., on the brief), for plaintiffs in error.

John D. Carroll, of Frankfort, Ky. (D. D. Hull, Jr., and Louis A. Nuckols, both of Roanoke, Va., and Jesse Morgan, of Hazard, Ky., on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. This case involves the construction and effect of the Kentucky statutes regarding champerty and maintenance. Section 209 invalidates all contracts made in consideration of services to be rendered in litigation by any person, not a party of record, whereby any part of the thing in controversy is to be given as compensation. Section 210 invalidates all conveyances of lands which at the time are possessed adversely by the grantor. Section 211 is quoted in the margin.[1] Section 212 permits the person in adverse possession to defend that possession upon the ground that the plaintiffs' claim is champertously held.

The meaning and effect of these sections, and particularly of section 211, are presented by these facts: Several persons, heirs of Smith and Baum, grantees of the state, owned by descent and conveyance five-eighths of the Smith and Baum title. The Southern Trust Company, an Oklahoma corporation (hereinafter called the "Southern"), had purchased tax titles upon the property and owned an interest therein, or at least a lien thereon. It became financially involved and the W. C. Belcher Land Mortgage Company, a Texas corporation (hereinafter called the "trustee"), being a large stockholder and creditor of the Southern, it was by the latter company voted "that the business affairs and properties of this company be placed in the hands of said [trustee] to be managed and controlled," etc. It was provided that, when the indebtedness to the trustee should have been worked out and paid, all the business affairs and properties should be returned to the Southern. Thereupon a plan was devised that the interests of the Southern and of the heirs should be assembled for joint management by the trustee. To carry this plan into effect, several identical contracts were drawn up, the pertinent portions of one of which are printed in the margin.[2]

Each of the heirs joined, in the form indicated. It does not appear whether the trustee did much or little towards carrying out this trust between December, 1919, and January, 1923; but on the latter date it began in the court below the ejectment suit at law now under review. In its petition the trustee, though appearing as sole plaintiff, describes itself in the caption as trustee for the heirs, and made averments as to the citizenship of

corded in Perry county, Ky., Wm. M. Smith and Mary, his wife, of Cincinnati, Ohio, and Andrew F. Baum and Margaret, his wife, of Pittsburg, Pa. (being the owners of 33 blocks of surveys, comprising in all 505 lots or surveys, of 200 acres each, patented to said Smith & Baum, and all located in what was then Perry county, Ky.), conveyed to Richard Arthurs an undivided one-fourth interest in and to all of said surveys.

And whereas, the Southern Trust Company, of Altoka, Oklahoma, is largely interested in the said 33 blocks of surveys, and holds under tax sales made by the state of Kentucky and confirmed by conveyance approximately an undivided three-eighths interest in and to said 33 blocks, and the said trust company has theretofore for many years paid taxes to protect its interest in said lands and has had surveys made and many plats and maps showing its claims and adverse claims;

And whereas, the direction of the affairs of the business of said Trust Company has recently been placed in charge of the W. C. Belcher Land Mortgage Company of Fort Worth, Texas;

And whereas, there are many adverse and conflicting claims to said lands besides those above mentioned and because it is believed to be for the best interest of the state (and of the counties of Perry, Leslie, and Knott, in which these lands are located) that conflicting interests be harmonized, so far as possible, and the title to these lands be perfected, without unnecessary litigation:

Now, therefore, the W. C. Belcher Land Mortgage Company, qualified by long experience in the successful handling of real estate (and having in charge already the large interest in said lands belonging to the Southern Trust Company), hereby offers its services and agrees as trustee to take charge of the various conflicting interests in the aforesaid Smith & Baum lands which the owners may trust to its care, consolidating as many interests as can be brought together by fairly equitable agreements, and to handle the lands in all respects as seems for the best interest of all; to distribute yearly the net earnings, not needed for the care of the business and sell the lands and divide the proceeds among the interested parties at the end of ten years, if not before; to facilitate the consolidation of interests as hereinbefore outlined, it is necessary to agree upon a relative value of each interest when it is brought into the consolidation.

Therefore it is agreed that the total capitalization of these consolidated interests shall be figured at $500,000, divided into 5,000 shares. And it is hereby agreed that the share of the

---

[1] 211. *Champertous Contract Concerning Land Forfeits Interest Therein.*—All contracts to prosecute a suit for the recovery of any lands in the adverse possession of another, for the whole or part of the land thus possessed, or for the whole or any part of the profits thereof, shall be null and void, and the parties to such contract shall forfeit all right, interest or claim in or to the land claimed under such pretended right or title; also, all right to maintain any suit at law or in equity upon such pretended right or title, and such right, title, or claim shall vest in the commonwealth and inure to the benefit of the person in possession, without office found.

[2] This contract, made at Fort Worth, Texas, this 20th day of December, 1919, witnesseth as follows:

On the 17th day of May, 1872, by deed re-

each of the heirs. Copies of the trust deeds and contracts were filed as exhibits. To this petition a general demurrer was filed, which the court sustained upon the ground that the deeds from the heirs were invalid under section 211. Plaintiffs then moved for leave to file an amended petition, substantially like the original, except that it set out the arrangement with the Southern, above recited, made the Southern and the heirs (including the owners of an additional one-eighth) parties plaintiff, and made several additional coal companies defendants. The court, observing

nothing new in this arrangement save what it thought the immaterial relationship to the Southern, and without making reference to the change of parties, denied this petition; and upon the assumption, which for the purposes of this opinion may be accepted, that plaintiff did not desire to plead over, finally dismissed the petition. This writ of error was brought by the trustee, the Southern, and the heirs, as several plaintiffs in error, joining in one writ.

[1] The provisions of section 211 are extraordinarily harsh. Indeed, so harsh is the lat-

---

Southern Trust Company in this capitalization is $180,000 (1,800 shares), and as each additional interest approves the consolidation its equitable share of the capitalization shall be determined by agreement with the W. C. Belcher Land Mortgage Company, and made a part of this consolidation contract. And it shall be the duty of said company to issue a certificate to each shareholder, stating the number of shares held by each, and to keep a record of certificates issued, and permit transfers as is usual in such cases. No certificate shall be issued except in payment for some interest in the Smith & Baum titles, or conflicting with said titles, except those issued to the trustee as herein provided.

It is understood that the holders of shares in this consolidation cannot be compelled to contribute toward the expenses of the administration.

The compensation of the W. C. Belcher Land Mortgage Company, as administrator of the interests hereby consolidated, shall be paid in shares as hereinbefore described, 50 shares per year for the first five years from November 1, 1919, up to November 1, 1924, on which last-mentioned date and annually thereafter the several parties interested shall confer together and decide (each party having one vote for each share of stock represented) on all questions pertaining to the expenses of administration, or compensation of the administrator, and upon all questions pertaining to the settlement or distribution of the trust estate. But the administrator's compensation shall at no time exceed the 50 shares per year as hereinbefore provided.

The funds necessary to cover running expenses and salaries of an attorney and field man, shall be provided for by the issue of mortgage bonds running not more than ten years and bearing not more than 7 per cent. annual interest, secured by mortgage on the lands and interests consolidated under this contract. And the administrator, the W. C. Belcher Land Mortgage Company, is hereby given full power and authority to execute the bonds, not exceeding in amount $100,000 and the mortgages securing same as above, and to sell said bonds; the proceeds of same to be used in protecting the best interests of all the parties hereto.

With the written approval of record owners of two-thirds of the shares in this consolidation, the W. C. Belcher Land Mortgage Company is hereby authorized to sell, to lease and convey any part or all of the lands and interests included in this contract; and a minority, including

holders of one-third or more of said shares, may at any time, on proper notice demand and have a partition of said lands.

It is also fully agreed by all who sign this contract that the W. C. Belcher Land Mortgage Company has, and is hereby given, authority to add further parties to this contract from owners of titles or claims on the so-called Smith & Baum lands, and to agree with each as to the relative value of his or her interest in said lands, and the number of shares at which each new interest shall be rated as hereinbefore outlined.

In attaching its signature to this contract, the W. C. Belcher Land Mortgage Company certifies its acceptance of the trust as hereinbefore stated; the Southern Trust Company likewise by its signature approves the consolidation of interests as herein provided, and the plans outlined herein for handling its interests in the lands hereinbefore described. The W. C. Belcher Land Mortgage Company, by H. H. Cobb, President. Southern Trust Company, by R. J. Edwards, President. C. P. Munch. Jenifer Baum Munch.

The State of West Virginia, County of Raleigh.

Know all men by these presents: That we, C. P. Munch and wife, Jenfer Baum Munch, of Eccles, West Virginia, in consideration of a certificate No. 9 for 250 shares in the consolidation of the lands and land titles agreed upon in the annexed contract, and in consideration of the profits and benefit expected from the said consolidation, which we hereby approve, and to which we hereby subscribe our names as parties do hereby grant, sell and convey to the W. C. Belcher Land Mortgage Company, trustee, named in said annexed contract, all our right, title and interest in and to the 33 blocks of land surveys as originally made in Perry county, Ky., and generally known as the Smith & Baum surveys, and as described in said annexed contract, with full power to lease, sell, and convey said lands and interest, subject only to the limitations provided in said contract.

And we hereby represent that our interest, which is hereby conveyed, is derived from Andrew F. Baum by descent, and that we convey said interest, subject to all tax claims or tax sale deeds which may exist against our said interest; but we do represent that we have no knowledge of any claims against said lands based on leases, sales, or conveyances made by grantors herein or by parties through whom grantors derive their title.

C. P. Munch.
Jenifer Baum Munch.

er portion providing for forfeiture to the state for the benefit of the adverse holder that in some early decisions the Kentucky Court of Appeals doubted or denied its validity; and, so far as the briefs inform us, it has been a dead letter during the 100 years of its existence. Act Jan. 7, 1824 (Laws 1823-24, c. 709). While the first clause of the section does not involve a forfeiture, it is harsh enough in declaring complete invalidity, no matter what the circumstances or equities may be. Contracts should not be construed to make them contrary to law or public policy if the other result may be reached by some reasonable construction. U. S. v. Central Pac. R. R., 118 U. S. 235, 240, 6 S. Ct. 1038, 30 L. Ed. 173. Indeed, the Kentucky Court of Appeals has said with reference to this very section: "The statute is a highly penal one, and should be construed to apply to that class of cases only to which the legislative intention, clearly expressed, has been directed, and to no others." Smith v. Paxton, 4 Dana (Ky.) 391, 395.[3] In the light of this principle, the present contract must be studied.

Each deed from the heirs conveyed the legal title, but the contract and the deed make up one agreement, the effect of which is to make the grantee the holder of that title merely as trustee, and with only the powers specified to be exercised for the benefit of the heirs. [2] Passing by the point that the contract does not show that it has to do with lands in adverse possession of another (for this omitted statement may be of an undisputed fact), we see at once that it does not purport to be the statutably denounced contract. If it is such contract, it is so only because the forbidden intent can be inferentially developed; so we observe how this is done. It is said that, if the lands were adversely held, it would be the legal duty of the trustee accepting this trust, to bring suit for the possession. Perhaps so; and yet that would depend upon the facts as to each parcel. It need bring no suit surely doomed to failure. It could hardly have a duty in this respect, except to exercise an honest discretion. Still more uncertain is the inference that the trustee, for its services in prosecuting such suit, is to receive part of the land. It has a variety of services to perform, entitling it to compensation. If suit is brought, the prosecution of it may be a small part of the service for which it is paid. All the land is to be put into quasi corporate form, the interests being represented by certificates, and for all its services the trustee is to receive 1 per cent. of the certificates for each one of the first five years. It would result that, if the service during the first five years included bringing suits, the trustee would receive as its apportionable compensation for that service some fraction of 5 per cent.; while, if the suits were not prosecuted until after five years, the contract provides for no compensation by way of certificates.

We have found no Kentucky case making application of this section, excepting as to contracts where the prosecution of the suit was the substantial thing agreed to be done and a large share of the property involved was to be paid therefor—in other words, where the champertous element of the agreement was overwhelming, or at least dominant. The statute seems never to have been applied to a case at all resembling this one.

The vital distinction between other cases and this may well be illustrated by the one upon which the defendants largely rely (Johnson v. Van Wyck, 4 App. D. C. 294), and in which there was a somewhat analogous quasi corporate arrangement;[4] but that case was of the plainest type. A half interest was to be given in exchange for the recovery, the prosecution of the suits for recovery was the only thing involved, and the prosecutor was to pay the entire expense. In the present case it is expressly agreed that the trustee shall pay nothing on account of any expense involved, save in the remote way that, if he becomes entitled to the 5 per cent. interest, that interest would be somewhat depreciated, because he would have joined with the other 95 per cent. in raising the expense money on the security of the whole property.

Applying the rule of 118 U. S. and 4 Dana, we conclude that the contracts of competent parties should be invalidated under this section 211 only when the forbidden element is both clear and characterizing, not where it is only obscure and contingent, and that this arrangement between the trustee and the heirs cannot be held obnoxious to either the letter or the spirit of the statute.

Two other considerations seem to lead to the same result. It is expressly held in Kentucky that these champerty statutes do not reach a case where the one who is to prosecute already holds an interest and makes arrangements with the others interested in the title that his fractional interest shall be in-

---

[3] For an illustration of the tendency to escape the harsh results of literal interpretation, see Washington v. McBrayer, 1 Dana (Ky.) 565.

[4] Though the certificates were not issued against the interest of the heirs; they represented only the speculative interest of the prosecutor.

creased if he succeeds. In Russell v. Doyle, 84 Ky. 386, 1 S. W. 604, one tenant in common was to sue for the lands, for himself and his cotenants, and to receive part of their shares of the recovery. The court held that the reason of the statute failed, such an arrangement made fewer lawsuits, instead of more, and that the language of the law must be restricted to the evil at which it was aimed. Nor it it important that the interests of those who thus agree among themselves are adverse to each other. The court, in Waller's Adm'r v. Marks, 100 Ky. 541, 38 S. W. 894, said: "Suppose that A. and B. were both claiming an interest in a tract of land, and had reasonable ground to so claim, and that C. and others were claiming the same land, no one being in possession; would not A. have a right to contract with B. to relinquish his claim, and aid B. in his contest with A. and others, upon the condition that, if B. succeeds, B. would convey 50 acres of the land to him (A.)?"

From this point of view, it is seen that the Southern had an interest in or a lien upon the land. Its contract with the trustee to handle its affairs involves no champerty; the trustee would have had a right to bring a suit to recover this interest, whether brought in the trustee's name or in the beneficiary's name; and hence it may forcefully be claimed to have a right to take from the heirs an interest in the recovery and expand its share, if it would proceed for the benefit of all. Indeed, if cotenant B. may convey to cotenant A. and give up an interest as compensation for the necessary litigation, why not to a trustee for A.? However, the definite decision of this question does not seem to be necessary.

[3] The consideration remains: The conveyances and contracts between the heirs and the trustee (and also a similar arrangement with the Southern, if there was one) were either valid according to their purport or null and void under section 211, or probably, considered as conveyances, void under section 210.[5] If they were good, as we think they were, that is the end of the matter; if they were "null and void," then the Southern and the heirs could be plaintiffs in this suit, in their own right, as they attempted to be by their tendered amended declaration. The Kentucky Code (section 21) permits a trustee to sue without joining his beneficiaries, but the next section of the Code provides that all parties in interest may be parties of record. We see no reason why the heirs, suing substantially in their own right, might not join the trustee, possessing an uncertain right which should be brought in for adjudication, or why the trustee, suing in his right, might not join his beneficiaries. It would certainly seem consonant with proper theories of pleading, that all parties might join in one suit and, if the difference turned out to be important, the final judgment might decide just which plaintiffs should succeed, although we do not perceive how this makes the slightest difference to the defendant. We do not know of any principle, and we find no Kentucky rule, which requires that when the defendant finds himself facing a double-barreled legal shotgun, he may insist that both barrels shall be fired, not at once, but successively, in order that he may change his position after the first one misses him. True, Kentucky holds that the vendor in a deed void under section 210 must rescind in some formal way before he sues in his own name (Scott v. Wolford, 150 Ky. 64, 149 S. W. 1140, and cases cited),[6] though it seems an anomaly that a contract "null and void" by reason of public policy needs formal rescission by a party, for any purpose; but in none of these cases did the grantors and the grantee come into court together by amended petition and in effect say: "We believed the grant to be valid, so that the grantee alone might sue; but the court thinks us wrong in that legal theory, so we bring in the grantor, in order that final judgment may be for the right party." This seems to us commendable practice, consistent with the Kentucky Code, and tending to lessen litigation and hasten the end.

We think the judgment must be reversed, and the case remanded for further proceedings under the first proposed amended petition, save that the informality of the effort to join an additional eighth, and the propriety of so doing by an amendment, are for the District Court to consider.

---

[5] We note that the validity of this section is now under attack in the Supreme Court in the pending case of Begley v. Erasime, 47 S. Ct. 342, 71 L. Ed. ——.

[6] But see Chiles v. Conway, 9 Dana (Ky.) 385, 387, which says "although * * * the deed may be void * * * the mere voidness of the deed would leave the title still in the grantor, and present no obstacle to the further prosecution of the suit."