# UNITED STATES *v.* CENTRAL PACIFIC RAILROAD COMPANY.

### APPEAL FROM THE COURT OF CLAIMS.

Argued April 29, 1886.—Decided May 10, 1886.

The act of July, 1, 1862, "to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean," 12 Stat. 489, and the act of July 2, 1864, 13 Stat. 356, amending the same, and the act of May 7, 1878, 20 Stat. 56, commonly called the Thurman act, are *in pari materia* and to be construed together ; and so construed the act of May 7, 1868, restores provisions of the act of 1862 respecting retention of compensation for services performed by the railroads for the United States

which had been changed by the amendment of 1864, and requires the Treasury to withhold all payment for services performed on the roads constructed by the aid of government grants, but not on roads owned or operated by the same companies which were not constructed with such aid.

When a contract is open to two constructions, the one lawful and the other unlawful, the former must be adopted. *Hobbs* v. *McLean,* 117 U. S. 567, affirmed.

*Mr. Solicitor General* for appellant.

*Mr. John F. Dillon* and *Mr. Joseph E. MacDonald* for appellee.

MR. JUSTICE WOODS delivered the opinion of the court.

The appellee, the Central Pacific Railroad Company, brought this suit, in the Court of Claims, against the United States, to recover compensation for services rendered the United States in transporting persons and freight over those parts of its railroad in the building of which it had not been aided by the government. The United States demurred to the petition on the ground that it did not allege facts sufficient to constitute a cause of action. The demurrer was overruled and judgment rendered in favor of the claimant for the sum demanded. From that judgment the United States have brought this appeal.

The appellee alleges in its petition that it was originally incorporated on June 28, 1861, under the laws of the State of California; that, with the aid of the grant of lands in alternate sections, and of bonds of the United States issued to it under the acts of Congress approved July 1, 1862, and July 2, 1864, it built, either directly or indirectly, and became the owner of, eight hundred and sixty-five miles and sixty-six hundredths of a mile of railroad. In addition to this line of road, the construction of which was so aided by the United States, the appellee, during the period covered by the petition, controlled and used 383.67 miles of railroad, acquired by consolidation with other companies, and 1791.35 miles of railroad leased by it from other companies, making 2175.02 miles, all of which had been constructed without any aid from the United

States under the said acts of Congress. The petition demanded pay for service of transportation rendered the United States over the 2175.02 miles of railroad which had been so constructed without their aid.

The contention of the United States was that they were justified in withholding the compensation sued for, by virtue of the provisions of § 2 of the act of May 7, 1878, ch. 96, 20 Stat. 56, commonly known as the Thurman act. We do not think this contention is well founded.

The act of July 1, 1862, ch. 120, 12 Stat. 489, was passed "to aid," so the title declared, "in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the government the use of the same for postal, military, and other purposes." The act of July 2, 1864, ch. 216, 13 Stat. 356, was an amendment to the act of July 1, 1862. By these acts certain railroad companies were aided in the construction of their roads. Among them was the appellee, which built the 865.66 miles above mentioned. It was aided in the construction of this part of its roads by an issue of bonds made to it by authority of the acts of July 1, 1862, and July 2, 1864. The act of July 1, 1862, made the following provisions to secure the payment of the principal and interest of the bonds so issued:

"Sec. 5. . . . The issue of said bonds and delivery to the company shall *ipso facto* constitute a first mortgage on the whole line of the railroad and telegraph," etc.

"Sec. 6. The grants aforesaid are made upon condition that said company shall pay said bonds at maturity, and shall keep said railroad and telegraph line in repair and use, and shall at all times transmit despatches over said telegraph line, and transport mails, troops, and munitions of war, supplies and public stores upon said railroad, for the government, whenever required to do so by any department thereof, and the government shall at all times have the preference in the use of the same for all the purposes aforesaid; . . . and all compensation for services rendered for the government shall be applied to the payment of said bonds and interest, until the whole amount is fully paid; . . . and after said road is com-

pleted, until said bonds and interest are paid, at least five per centum of the net earnings of said road shall also be annually applied to the payment thereof."

By the act of July 2, 1864, it was provided as follows:

" Sec. 5.   . . .   Only one-half of the compensation for services rendered for the government by said companies shall be required to be applied to the payment of the bonds issued by the government in aid of the construction of said roads."

These sections, taken together, constitute the contract between the United States and the appellee. *United States v. Union Pacific Railroad Co.*, 91 U. S. 72; *Sinking Fund Cases*, 99 U. S. 700, 718; *Union Pacific Railroad Co. v. United States*, 104 U. S. 662. This contract is binding on the United States, and they cannot, without the consent of the company, change its terms by any subsequent legislation. *Sinking Fund Cases, ubi supra.*

These provisions of the statute law of the United States being still in force, Congress passed the act of May 7, 1878, being the Thurman act, above referred to. The preamble of this act mentions by name the companies which had been aided by bonds of the United States under the acts of July 1, 1862, and July 2, 1864. The first section declares how the net earnings referred to in those acts shall be ascertained, and the second section provides as follows:

"That the whole amount of compensation which may, from time to time, be due to said several railroad companies respectively for services rendered for the government, shall be retained by the United States, one-half thereof to be presently applied to the liquidation of the interest paid and to be paid by the United States upon the bonds so issued by it as aforesaid, to each of said corporations severally, and the other half thereof to be turned into the sinking fund hereinafter provided, for the uses therein mentioned."

The case turns on the true interpretation of this section, the appellants contending that it authorized them to retain compensation earned for transportation over all the roads owned or leased by the appellee, whether the construction of such roads had been aided by the issue of government bonds or not,

and the appellee contending that the compensation referred to was that earned by transportation over that part only of its lines which had been assisted by the government subsidy.

The acts of July 1, 1862, July 2, 1864, and May 7, 1878, all relate to the same subject. The latter act is declared by its title to be amendatory of the first two, and its last section provides that each and every of its provisions shall be "held as in alteration and 'amendment" of the two acts first mentioned. The three acts are, therefore, to be construed together as one act, and one part to be interpreted by another. *United States* v. *Freeman*, 3 How. 556, 564; *Crespigny* v. *Wittenoom*, 4 T. R. 790, 793; *Commonwealth* v. *Slack*, 19 Pick. 304.

One of the provisions of the act of July 1, 1862, closely allied to the one under consideration, was construed by this court in the case of *United States* v. *Kansas Pacific Railway Co.*, 99 U. S. 455. The Kansas Pacific Railway Company was one of the companies to which the United States issued bonds in aid of the construction of its road under the act just mentioned. Assisted by this issue of bonds, it had built 393⅛ miles of road. It afterwards built 245 miles without aid from the government. The United States brought suit against the company to recover the five per cent. of net earnings, to be applied to the payment of the bonds and interest, as provided by § 6 of the act of 1862. One of the controversies in the case was whether the government was entitled to the five per cent. net earnings on that part of the road which had been built without government aid. This court decided that it was not. Speaking by Mr. Justice Bradley it said: "We are of opinion . . . that the subsidy bonds granted to the company, being granted only in respect of the original road, . . . are a lien on that portion only, and that the five per cent. of the net earnings is only demandable on the net earnings of said portion." With this decision in view, it would be impossible to hold with any show of reason that the compensation for services rendered the United States, which by the same section was required to be applied to the payment of the same bonds, included compensation for services rendered by a road the construction of which had not been aided by the issue to the company of government bonds.

In the case of *United States* v. *Denver Pacific Railway Co.*, 99 U. S. 460, decided at the same term, and in which the judgment was delivered by the same justice, it was held that the United States had no right, under the sixth section of the act of 1862, to retain compensation for services rendered upon a road, the construction of which it had not aided by its bonds. The ground upon which the court placed its decision was that the government had no lien except upon a road which it had so aided, and could retain neither the five per cent. of the earnings of a road to which it had issued no bonds, nor compensation for transportation services thereon.

This court having thus interpreted the act of July 1, 1862, we cannot, consistently with the established rules of construction, give a different meaning to substantially the same words in the act of May 7, 1878. *Reiche* v. *Smythe*, 13 Wall. 162. In the act of July 1, 1862, the provision is, that "all compensation for services rendered for the government shall be applied to the payment of said bonds." In the act of May 7, 1878, the words are, that "the whole amount of compensation . . . for services rendered for the government shall be retained by the United States," one half to pay interest and the other half to be turned into the sinking fund. If the two acts are to be construed together and as one act, we must give the same meaning to like expressions in both. We cannot say in one case that the compensation mentioned means compensation only for services on aided roads, and in the other that it includes compensation for services on roads not aided.

There is another view of this controversy which seems to us conclusive. As the contract between the United States and the railroad company contained in the acts of July 1, 1862, and of July 2, 1864, has been interpreted by this court to authorize the retention by the government of compensation for services only on those roads which the United States aided in building, the construction which the appellants seek to put on the second section of the act of May 8, 1878, would not only render that section a breach of faith on the part of the United States, but an invasion of the constitutional rights of the appellee. We are bound, if possible, so to construe the law as to lay it

open to neither of these objections. *Broughton* v. *Pensacola*, 93 U. S. 266; *Red Rock* v. *Henry*, 106 U. S. 596; *Hobbs* v. *McLean*, 117 U. S. 567, decided at the present term, and cases there cited; *United States* v. *Coombs*, 12 Pet. 72. The construction contended for by the appellee preserves the good faith of the government, and frees the act from the imputation of impairing rights secured by the Constitution of the United States.

In our view the construction of the second section of the act of May 7, 1878, is plain, and not fairly open to controversy. By the act of July 1, 1862, "all compensation for services rendered for the government" was to be applied to the payment of the bonds issued by the United States to aid in building the road. By the act of July 2, 1864, only "one-half of the compensation for services rendered for the government" by said company was required to be applied to the payment of the bonds. The act of May 7, 1878, merely restored the provisions of the act of July 1, 1862, and again required all compensation for services rendered the government to be applied to the payment of the bonds. This compensation, as we have seen, has been limited by the decisions of this court to compensation for services rendered by the aided roads. The construction of the second section of the act of May 7, 1878, contended for by the appellee, is, therefore, right. *Judgment affirmed.*