# CHARLESTON.

## COUNTY COURT *v.* TOWN OF PIEDMONT.

Submitted September 12, 1911.   Decided April 15, 1913.

1.   MUNICIPAL CORPORATIONS—*Municipal Powers—Exercise.*
     The exercise of municipal powers, by proper construction, is confined to the territorial limits of the municipality, and are, (1) such as are granted by express words; (2) those fairly implied or incident to those expressly granted; and (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.   (p. 297).

2.   SAME—*Contracts—Bridge in Another State.*
     A town or city of this state, within these rules, has no power or authority to enter into a contract with the county court of the county in which it is located to contribute to the expense of building a bridge, without its corporate limits, and which is located wholly within another state.   (p. 298).

3.   SAME—*Void Contracts—Liability of City.*
     Nor is such a contract or promise of a town or city to contribute to the expenses of building such bridge binding on principles of the common law or on the theory of its obligation to do justice. Receiving no money or property or title thereto from the county which in justice it should restore, and its

contract being absolutely void, and not capable under any power of being ratified, it cannot be rendered liable on its void promise. (p. 299).

Error to Circuit Court, Mineral County.

Action by the County Court of Mineral County against the Town of Piedmont. Judgment for plaintiff, and defendant brings error.

*Reversed and Rendered.*

*Harry K. Drane,* and *Frank C. Reynolds,* for plaintiff in error.

*Charles N. Finnell,* for defendants in error.

Miller, Judge:

In the court below, on facts agreed, plaintiff obtained judgment against defendant for $647.80. The cause of action alleged, and on which the judgment is predicated, was, that while plaintiff and the county commissioners of Allegheny County, Maryland, had under consideration the construction, by joint action, of a bridge across the Potomac River, defendant, in consideration that a foot way would be built on each side of the proposed bridge promised and agreed to pay or contribute the sum of five hundred dollars towards the expense thereof; and that at the time of entering into said agreement defendant, by its council, had laid a special levy of ten cents on the hundred dollars, to pay the same, and that said bridge had been constructed as agreed, and paid for by plaintiff, and that defendant, by its said promise had become bound to pay plaintiff the sum so stipulated, and paid by plaintiff on its account.

The defense was and is that the alleged promise was absolutely void because *ultra vires.*

The agreed facts admit the contract or promise, substantially as alleged; and also that bridge and abutments are wholly within the County of Allegheny, State of Maryland, and that at the time the bridge was built Ashfield street ran to the bridge and was connected with it, and is the only approach to the bridge from the Town of Piedmont.

, A general proposition, well supported by authority, is that the exercise of municipal powers are, by proper construction.

confined to the territorial limits of the municipality, and are, (1) such as are granted by express words; (2) those fairly implied in or incident to those expressly granted; and (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable; and that any fair and reasonable doubt concerning the existence of the power should be resolved by the courts in favor of the corporation. 1 Dillon Munc. Corp. (3rd ed.) section 89; *Id.* (5th ed.) section 237; *Christie* v. *Malden,* 23 W. Va. 667; *Winchester* v. *Redmond,* 93 Va. 711, 57 Am. St. Rep. 822; Cooley's Const. Lim., section 312.

The primary question then is, had defendant, within either of these classes, power to build or to contribute to the expense of building a bridge, which the agreed facts say was located wholly outside its corporate limits, and indeed wholly within another state and county? We are referred to no express power, conferred by charter, or general law, or as incident thereto, nor can we clearly and without doubt imply such power from any of the powers granted, nor can we say that such power is essential to the accomplishment of the declared object and purposes of the municipality. One of the streets of the town, it is true, runs to the bridge, and is connected with it, and is the only approach thereto from the town; and that the bridge is highly convenient and beneficial to the citizens of the town may be admitted. But can it be said that there is any legal obligation on the town, to build or maintain or contribute to the building or maintenance of such a bridge? Certainly not. And mere convenience, according to the authorities cited, and some of the cases soon to be cited, is without the pale of municipal powers, not specifically conferred.

The rules and principles of the authorities cited were applied in *Duncan* v. *Lynchburg,* (Va.) 48 L. R. A. 331, holding a city not liable for a nuisance created by the pollution of a stream, by its employees, while operating a rock quarry, outside the limits of the city; and in *Becker* v. *La Crosse,* (Wis.) 40 L. R. A. 829, holding a city not liable for injury sustained by a traveller thereon, on the opposite side of the river, which it spanned, and in the state of Minnesota, although the bridge had been built by it across the river by authority of legislative act. The

syllabus of that case is: "A city cannot accept a grant from another state to operate a toll road beyond its limits and the limits of its own state, or be held liable for defects in such road if operated by it, when it is not authorized to do so, by the laws of its own state, although the toll road is made to connect with the city toll bridge that the city has constructed under lawful authority"; and in *Abendroth* v. *Greenwich,* 29 Conn. 356, holding a city not liable on a contract or promise to pay a certain amount toward the expense incurred in building a bridge connecting it with a town in another state, the undertaking being both without consideration, and beyond its power; and in *Mayor of Albany* v. *Cunliff,* (N. Y.) 2 Comstock 165, holding a city not liable to one injured by the falling of a bridge built by its officers under a statute not constitutionally passed for want of a two thirds vote.

Plaintiff, however, seeks to support its judgment on principles of the common law, and upon the alleged obligation of the defendant to do justice. It is affirmed that at common law, and independently of statute, a county can expend money for a bridge or highway across a boundary line and beyond it, if regarded necessary for the use and convenience of its citizens. Citing *Washer* v. *Bullitt County,* 110 U. S. 559. In this state, so far as counties are concerned the subject of building bridges is regulated by statute. Chapter 43, Code 1906, Code Suppl. 1909; chapter 38, Acts. 1911. By these statutes, counties, not magisterial districts or municipalities therein, unless specially required or authorized by statute, may be required to build and maintain bridges. *Hedrick* v. *County Court,* 71 W. Va. 732, 77 S. E. 359. Whether a county of this state can be compelled on statutory or common law grounds to build a bridge across a river into another state, is a question not arising and we need not and do not decide it. But certainly *Washer* v. *Bullitt County,* cited for the proposition, has little, if any, application to a town or municipality within a county.

But can the liability of defendant find support in its obligation to do justice? If the town had received money or property or title thereto from plaintiff, which in justice it ought to restore; or if by virtue of some other power not exercised at the time, its obligation could be ratified or confirmed, and it had done any act amounting to such ratification it might be ren-

dered liable thereby.  Besides *Marsh* v. *Board of Supervisors,* 10 Wall. (U. S.) 676, relied on, see, also, *Salt Lake City* v. *Hollister,* 118 U. S. 256, *Maher* v. *Chicago,* 38 Ill. 266, *Parker* v. *Philadelphia,* 92 Pa. 401, *Chicago* v. *McNichols,* 98 Ill. App. 447.  The first two cases illustrate as well as any, perhaps, the application of the first of these principles, and *Maher* v. *Chicago* and *Parker* v. *Philadelphia,* the application of the latter.  But here the town got nothing, not even title to the bridge; that belonged to the two counties, by whose joint act the same was built. Citizens were convenienced thereby, but the city got nothing by its promise in the shape of money or tangible property, which it can or can be required to restore.  Wherefore the authorities cited do not apply.  If it be true that it collected the taxes levied to pay the sum contracted for, the levy was clearly illegal, and if collected and not refunded, the money would go into the general fund, reducing the taxes for subsequent years.  In this case the taxes were laid and collected to pay a contract wholly void, and which the town had no power under any circumstances, or by the exercise of any power, to make, distinguishing this case from *Parker* v. *Philadelphia,* where the contract involved was regarded void because made without a previous appropriation to pay the contract price, and the money paid in on special assessments against property owners was regarded as belonging to the contractor, and the city liable therefor.  Such is not the case here.  Nor is this such a case as is presented in *The People ex rel. Murphy* v. *Kelly,* 76 N. Y. 475, involving the building of the Brooklyn bridge, by joint action of New York City and the City of Brooklyn, under special act of the legislature.

Upon these principles we are of opinion that the judgment below is erroneous and should be reversed, and a judgment entered here for defendant on the facts agreed, and we will so order.

*Reversed and Rendered.*