**NOEL, Collector of Internal Revenue, v. PARROTT.**

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2459.

1. **Internal Revenue** ⟾7(3).

Amount paid to general superintendent and director of corporation under directors' resolution for distribution *held* not to constitute a gift, but taxable "income," within meaning of Revenue Act 1918, § 213, subd. (a), and subdivision (b), (3), being Comp. St. § 6336⅛ff.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. **Gifts** ⟾1.

"Gift" is a voluntary transfer of property by one to another without any consideration or compensation therefor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gift.]

3. **Evidence** ⟾73.

It will be assumed that corporate directors did not intend resolution authorizing distribution to certain officers and employees as authority to make gifts to members in violation of trust.

4. **Internal revenue** ⟾7(1).

"Income," within meaning of Const. Amend. 16, and Income Tax Acts, is gain derived from capital or labor, or from both combined.

5. **Internal revenue** ⟾7(11).

Gain or profit resulting from sale of one's stock in corporation, along with holdings of other stockholders, is taxable as income.

In Error to the District Court of the United States for the Eastern District of Virginia at Richmond; D. Lawrence Groner, Judge.

Action by John H. Parrott against John C. Noel, Collector of Internal Revenue for the District of Virginia. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

See, also, 8 F.(2d) 368.

This action was instituted to recover a payment on income tax made under protest to the collector of internal revenue for the district of Virginia. A jury trial was waived, and all questions were submitted to the court, who made extended findings of fact, and held thereon that the taxpayer was entitled to recover. The only exceptions are those taken to this judgment. The parties will be referred to in accordance with the positions which they occupied in the court below. The material facts, as found by the district judge, were as follows:

On July 14, 1919, and for some time prior thereto, plaintiff was general superintendent and a member of the board of directors of the American Coal Company, a corporation of Alleghany county, N. J. He continued to hold these positions until May 20, 1920. For his services as general superintendent he received an annual salary of $7,000, to which was added a bonus of $3,500.

From July, 1919, until May, 1920, continuous effort was made to sell the stock and assets of the American Coal Company. On July 14, 1919, a resolution was adopted by the executive committee, by which the officers of the company were directed to secure a bid for the physical properties of the company, or for the shares of stock, and were authorized to sell the shares of the directors at $57 per share, at any time subsequent to the distribution of $25 per share. At the same time, the executive committee passed the following resolution: "Resolved, that a gratuitous appropriation equal in amount to $3 per share on the outstanding stock of the company be set aside out of the assets *for distribution to certain officers and employees* of the company and that the executive committee be authorized to make such distribution as they deem *wise and proper.*" (Italics ours).

These resolutions were immediately approved by the board of directors, and thereupon the executive committee passed a resolution directing that the appropriation authorized by the resolution last quoted be distributed as follows: $45,947 to the president of the corporation, who was also a director; $45,947 to the treasurer and auditor; $35,000 to the plaintiff; $7,500 to the secretary; $5,000 to the assistant treasurer; and $6,400 to three clerks.

The corporation had a large accumulated surplus at the time of the passage of these

resolutions, but no distribution was made pursuant thereto at that time.

On April 24, 1920, a contract was made between William C. Atwater & Co., Inc., and certain stockholders of the American Coal Company, by which these stockholders agreed to sell their stock and to procure the sale to the Atwater Company of at least 25,000 of the 48,598 outstanding shares of the American Coal Company at $75 per share, and the Atwater Company agreed to buy the entire outstanding stock at the same price, if stockholders should deposit it with a trustee by a stated time. The contract provided that the agreed price of $75 per share might be reduced by $10 per share, if a dividend to that amount were paid before a stated time, and continued: "* * * It being understood and agreed that the said coal company may, in addition to the dividend hereinabove provided for, distribute a further sum in amount equal to $3 per share on the 48,598 shares of the outstanding stock, in such manner and for such purpose as the directors may by resolution decide in addition to the current expenses of the company."

On April 26, 1920, a letter was sent by the president of the American Coal Company to its stockholders, telling of the contract and the opportunity to sell the stock at $75 per share, and concluding: "If the purchase is completed, the present officers and directors will resign and be replaced by men selected by the purchasers, and, in that event, the retiring officers and employees will participate in an appropriation equal to $3 per share, unanimously voted to them by the directors, the same, with the approval of the purchasers, to be paid from the assets of the company, and will not affect the purchase price of $75 offered for the stock."

Practically all of the stockholders turned in their stock and accepted the price offered by the purchaser. On May 20, 1920, the officers of the company distributed the fund appropriated by the executive committee's resolution of July 14, 1919, in the amounts provided by the resolution adopted at their second meeting on that date. By such distribution the plaintiff received $35,000. Thereafter, still on May 20, 1920, the plaintiff and all the other officers and directors of the American Coal Company resigned, and the purchaser of the stock took over the management of the corporation.

The American Coal Company, in its income tax return for the year 1920, treated and claimed the sum so distributed to the plaintiff, and similar sums distributed to others, as a salary deduction from its gross income. The plaintiff, in his income tax return for 1920, excluded from gross income this item of $35,000. On audit, the commissioner of internal revenue determined that the item of $35,000 should have been included in gross income. An appeal to the Board of Tax Appeals resulted in a decision adverse to the plaintiff. Whereupon he paid, under protest, the tax assessed on the $35,000 gross income, which amounted to $22,915.25, and instituted this action to recover it.

LeRoy L. Hight, Sp. Atty. in office of Solicitor of Internal Revenue, of Washington, D. C. (Paul W. Kear, U. S. Atty., of Norfolk, Va., and A. W. Gregg, Sol. of Internal Revenue, of Washington, D. C., on the brief), for plaintiff in error.

Homer Sullivan, of Washington, D. C. (Harrison Brand, Jr., of Washington, D. C., and Cyrus W. Beale, of Richmond, Va., on the brief), for defendant in error.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

PARKER, Circuit Judge (after stating the facts as above). The sole question involved in this case is whether the $35,000, paid to plaintiff under the circumstances above set forth, is taxable as income under the Revenue Act of 1918. The plaintiff contends that it is not so taxable, his position being that it was a gift, and, as such, expressly exempted from taxation as income under the act. The defendant collector contends that it was not a gift, and, if not treated as "compensation for personal service," is at least a "gain" or "profit" which under the statute must be included in the return of gross income.

The pertinent provisions of the statute in question are as follows:

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or

gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer; * * * but

"(b) Does not include the following items, which shall be exempt from taxation under this title: * * *

"(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income)." Comp. St. § 6336⅛ff.

[1, 2] We are satisfied that the $35,000 was not a gift to plaintiff within the meaning of the statute, but is to be regarded either as compensation paid him for services previously rendered and for loss sustained in the termination of his employment, or as profit realized on the sale of the stock to Atwater & Co., and that, in either view, it was taxable as income under the act. A gift is a voluntary transfer of his property by one to another, without any consideration or compensation therefor. Gray v. Barton, 55 N. Y. 68, 14 Am. Rep. 181; Curriden v. Chandler, 79 N. H. 269, 108 A. 296. Although it is held that the motive accompanying a gift is not material, gifts usually proceed from the generosity of the giver; and, where there is any doubt as to the nature of the transaction, the absence of such motive is a pertinent circumstance for consideration. It is an essential characteristic of a gift, however, that it be a transfer without consideration. If there is a consideration for the transaction, it is not a gift. 28 C. J. 621. In the instant case, not only was the payment of the $35,000 not prompted by generosity, and not without consideration, but it affirmatively appears that it was made upon a consideration, and that it was deemed a "wise and proper" expenditure by the executive committee of the board of directors. It nowhere appears that it was treated or referred to as a "gift," but, on the contrary, was claimed by the corporation as a salary deduction from its gross income in its income tax return.

There is some controversy as to whether the character of the payment to plaintiff should be determined by reference to the resolutions of July 14, 1919, or by reference to the contract of April 24, 1920, and the subsequent letter of April 26th, to the stockholders, and their sales of stock pursuant thereto; but, no matter which of these is looked to, or whether all are considered together, it is clear that the transaction was not a gift.

[3] If we look to the resolutions of July 14, 1919, it appears that the appropriation from the assets was for distribution to "certain officers and employees of the company," and that the executive committee was authorized to make such distributions as they might deem "wise and proper." This negatives the idea that a gift was intended; for the distribution was to be made to those who had rendered services to the company; i. e., to those from whom the company had received a consideration in the past. It was to be made as the executive committee might deem wise and proper; i. e., in accordance with the interests of the corporation and the deserts of the persons to be benefited by the distribution. The distribution was thus to be in the nature of a bonus, which "is not a gift or gratuity, but a sum paid for services, or upon a consideration in addition to or in excess of that which would ordinarily be given." Kenicott v. Wayne County, 16 Wall. 452, 471 (21 L. Ed. 319); Payne v. United States, 50 App. D. C. 219, 269 F. §72. It needs neither argument nor citation of authority, to establish the proposition that the directors were without authority to give away the corporate assets, and that for them to make to several of their members and other persons a gift of a large sum of money from the corporate assets would be neither "wise" nor "proper," and would amount to an illegal misapplication of corporate funds. We must assume that the directors did not intend such a flagrant violation of their trust. Delaware, L. & W. R. Co. v. Kutter (C. C. A. 2nd) 147 F. 51, 77 C. C. A. 315; Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940; U. S. v. Cent. Pac. R. Co., 118 U. S. 235, 6 S. Ct. 1038, 30 L. Ed. 173. It is no answer to this position to say that the stockholders ratified the gift by accepting the offer of $75 per share after notice that the distribution was to be made, for we are dealing with the interpretation of the resolutions, not with the validity of the action taken under them. And that this interpretation was the one intended is shown by the subsequent action of the corporation in claiming the disbursements made under the resolution as salary deduction from gross income.

[4, 5] If we look only to the transactions surrounding the sale of stock to Atwater & Co., the $35,000 paid plaintiff was not a gift, but a profit realized by him on the sale of the stock. Stripped of verbiage, the contract with Atwater & Co. provided that, in consideration of obtaining 25,000 of the outstanding shares of stock at $75 per share, they would consent that assets of the cor-

poration to the extent of $145,794 be distributed to such persons as the then directors might designate. When the sale was carried through on this basis, the directors paid plaintiff $35,000 as his part of this fund. The law regards substance and not form; and, when the plaintiff, as the result of putting through the sale, received this $35,000 in addition to the $75 per share for his stock, it was as much a gain or profit which he had realized as it would have been if he had received the $35,000 direct from the purchasers. To call such a transaction a gift would do violence to the well-understood meaning of that word; and to hold that gains and profits realized in this manner are not subject to taxation as income would open the door to the grossest evasions of the law. · It has been expressly decided that income, within the meaning of the Sixteenth Amendment and the Income Tax Acts passed pursuant thereto, is a gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital assets. Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. And it includes the gain from capital realized by a single isolated sale of property. Merchants L. & T. Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. And it also includes profit derived from the sale of a mere right to subscribe to stock in a corporation upon the increase of its capital stock. Miles v. Safe Deposit Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923. In the light of these decisions, a gain or profit resulting from the sale of one's stock in a corporation along with the holdings of other stockholders would certainly be taxable as income. Whether the making of such a profit by a director might not be attacked by the other stockholders does not arise in this case.

When we view the resolutions of July 14, 1919, and the efforts to sell the stock or physical properties of the corporation in connection with what was done upon the sale to Atwater & Company (and, of course, this is the proper way to view the facts), it is apparent that the resolutions directing distribution to the officers and employees named were passed in anticipation of a sale of either the stock or the physical properties of the corporation, and were intended, not to make a gift to the officers and employees named, but to grant them additional compensation for services theretofore rendered as well as compensation for bringing about the sale and for the loss of their posi-

tions expected to result therefrom. When the sale was actully made, the terms of sale were so fixed that the officers and employees named in the resolution would receive the compensation therein provided. The payment to them, therefore, was not without consideration, as in case of a gift. The consideration was their previous service to the company, the relinquishment of their positions, the sale of their stock, and the efforts which they, or some of them, put forth to bring about the sale of all of the stock of the corporation. If the payment to plaintiff and the other officers and directors had been concealed, it might have been subject to attack as a secret profit; but it appears that the facts were fully and fairly disclosed to the stockholders, and that they ratified the action taken by the sale of their stock under the terms proposed. The $35,000 thus appears to have been additional compensation and profit legitimately realized by plaintiff, with the knowledge and consent of the other stockholders of the corporation.

In no view of the evidence, therefore, can the $35,000 be regarded as a gift. It was either compensation for services rendered, or a gain or profit derived from the sale of the stock of the corporation, or both; and, in any view, it was taxable as income. It follows that there was error in the judgment of the learned district judge, and same is accordingly reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed.