## FIFTH STREET BLDG. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7198.

Circuit Court of Appeals, Ninth Circuit.
May 13, 1935.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal. (Edward S. Brashears, of Washington, D. C., and Clark J. Milliron and George H. P. Shaw, both of Los Angeles, Cal., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, Circuit Judge, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is a petition for review of the final order and decision of the Board of Tax Appeals. Involved are asserted deficiencies in petitioner's income taxes for the years 1921 and 1926, in the amounts of $16,710.96 and $1,142.72, respectively, determined by the Commissioner and redetermined by the Board of Tax Appeals. 24 B. T. A. 876. The facts are set forth in detail in the opinion of the Board. They are not in dispute, and are substantially as follows:

On November 1, 1920, Gladys Bilicke and A. B. C. Dohrmann were the executrix and executor, respectively, of the estate of A. C. Bilicke, deceased. The said estate owned real property, and the buildings thereon, situated in Los Angeles, Cal. In 1911, during his lifetime, A. C. Bilicke had executed three leases on the property to Muse, Faris & Walker Company, a corporation, as lessee, at an aggregate annual rental of $96,000, each lease to expire October 31, 1922. In 1916 these leases were assigned by the lessee to R. M. Walker and W. A. Faris, doing business under the firm name of Faris-Walker, the Fifth Street Store. On November 1, 1920, the said Gladys Bilicke and A. B. C. Dohrmann, as parties of the first part, and the said W. A. Faris and R. M. Walker, as parties of the second part, entered into an agreement, by the terms of which the parties of the first part agreed to cause a corporation to be formed and transfer to it the property of the estate referred to, then under lease to Faris and Walker, and providing that the corporation so organized would execute a 99 year lease of the property to a corporation to be organized by Faris and Walker. The proposed lease for 99 years provided that the term of the demise should commence January 1, 1921, and "that the lessee should pay a yearly rental of $50,000 throughout the term of the lease, should pay all taxes, etc., should erect at its own cost a modern steel frame or reinforced concrete fireproof store and loft building, having a basement and at least eight stories, such building to cover at least the area covered by the old building then on the premises." At the time of the signing of the proposed lease, Faris and Walker agreed to execute a guarantee of the faithful performance by the lessee of the lease covenants until the building therein specified should be erected. The agreement for lease also contained a provision that the existing leases on the property would be canceled as of December 31, 1920, upon payment by Faris and Walker, the lessees, of a bonus of $30,000 in consideration of the cancellation. On November 2, 1920, Faris and Walker transferred to C. J. Milliron all of their right, title, and interest in and to the foregoing agreement for lease between them and the executors of the Bilicke estate, and delivered to Milliron a letter signed by them and reading as follows: "In consideration of your assuming all of the duties and obligations imposed upon us by reason of our contract to execute a lease dated November 1st, 1920, between Gladys Bilicke and A. B. C. Dohrmann and ourselves as second parties, a copy of which agreement is attached, we hereby give and assign to you all our right, title and interest in said agreement, it being understood that you are to assume all of our obligations either directly or indirectly imposed as a result of this agreement."

On the same day Milliron signed and delivered to Faris and Walker a letter acknowledging the transfer, reading as follows:

"Your gift to me today of your contract of November 1st to execute a lease on the premises generally known as the 'Bilicke' properties, is hereby accepted and I agree to assume all your obligations thereunder and to hold you free and clear of any liabilities as a result thereof."

"I will cause to be prepared an assignment of this contract executed in due form for the purpose of record."

On January 2, 1921, prior to the organization of the corporations provided for in the agreement for lease, Milliron, as lessor, executed a lease of the premises in question to Faris and Walker, as lessees, for one

year commencing January 1, 1921, and for such longer term as might be agreed upon between the parties, at an annual rental of $150,000. On January 15, 1921, the Fifth & Broadway Investment Company was organized as a corporation under the laws of the state of California, as agreed by Gladys Bilicke and A. B. C. Dohrmann in the agreement for lease of November 1, 1920. On March 30, 1921, pursuant to the terms of the agreement for lease, Milliron caused to be, organized, under the laws of California, a corporation known as Fifth Street Building, petitioner herein, with an authorized capital stock of $1,500,000, divided into 15,000 shares of a par value. of $100 each. On May 18, 1921, in consideration of 6,400 shares ($640,000) of the capital stock of petitioner, Milliron transferred to petitioner all his right, title, and interest in and to the agreement for lease acquired by him from Faris and Walker. Immediately thereafter, the total number of outstanding shares of petitioner's capital stock was 6,403, only three other shares having been subscribed for. On May 20, 1921, the 99 year lease provided for in the agreement for lease was executed by Fifth & Broadway Investment Company, as lessor, and petitioner, as lessee. This lease provided that the term thereof commence as of January 1, 1921.

■ The deficiency for the year 1921 results from the Commissioner's refusal to allow petitioner to include in its invested capital the sum of $640,000 paid by it to acquire from Milliron the agreement for lease of November 1, 1920.

The statute in question is section 331 of the Revenue Act of 1921, 42 Stat. 276, which provides: "That in the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by

such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation."

It appears clear that section 331 is applicable here and that it prohibits the inclusion of the amount in question in petitioner's invested capital. In exchange for the agreement for lease, Milliron received 6,400 of the 6,403 outstanding shares of petitioner's capital stock. Therefore an interest or control of more than 50 per cent. of the property remained in him. Milliron paid Faris and Walker nothing for the assignment of the agreement to him.

■ In determining what amount is entitled to be included in invested capital, as limited by section 331, supra, the controlling factor is the cost of the property to the previous owner. Northwestern Motor Car Co. v. Commissioner (C. C. A. 7) 45 F.(2d) 357; Conrad & Co. v. Commissioner (C. C. A. 1) 50 F.(2d) 576. Since the agreement for lease cost Milliron, the previous owner, nothing, the amount paid by petitioner for the same was properly excluded from its invested capital.

■ Section 202 (a) (2) of the Act of 1921, 42 Stat. 229, provides that in the case of property acquired by gift on or before December 20, 1920, the basis for ascertaining gain or loss from a sale or other disposition thereof shall be the fair market value of the property at the time it was acquired. Petitioner contends that the agreement for lease was acquired by Milliron as a gift from Faris and Walker, on November 2, 1920, and accordingly, that section 202 (a) (2) applies. It is argued that the term "fair market value," as used in section 202 (a) (2), is controlling in determining "the cost of acquisition," as used in section 331; in other words, that the cost of the gift to Milliron was its fair market value ($640,000) on the date of acquisition, and that petitioner is therefore entitled to include that amount in its invested capital. The Board held that a construction of these sections as contended for by petitioner would result in legislation rather than interpretation of the statute, saying:

"Section 331 of the Revenue Act of 1921 applicable in this proceeding in the

determination of invested capital provides that 'if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition * * *.' We are asked to construe the words 'cost of acquisition' as used in section 331, supra, to mean 'value' as used in section 202 (a) (2) of the Revenue Act of 1921. This section provides that in the case of property acquired by gift on or before December 31, 1920, the basis for ascertaining gain or loss shall be the fair market value or value thereof at the time of such acquisition. Section 202 (a) and section 202 (a) (2) clearly disclose that the words 'cost' and 'value' are of different meaning for section 202 (a) provides that the basis for determining gain or loss shall be the cost thereof while section 202 (a) (2) changes the basis of cost to the basis of value as to gifts made prior to December 31, 1920, an exception to section 202 (a).

"Section 331 itself impliedly prohibits such construction for it provides that for invested capital purposes the 'value' of any asset so transferred or received shall be taken at its 'cost of acquisition.' This language is clear and unambiguous and is not open to the construction contended for. If the word 'value' were substituted for the word 'cost' as contended by the petitioner it would result in legislation rather than a construction of such section."

We are in accord with the views so expressed by the Board.

 The deficiency for the year 1926 results from the Commissioner's refusal to allow petitioner any deduction in that year for depreciation or exhaustion in the value of the leasehold. The Commissioner's determination in this respect is based on the ground that no basis exists for determining depreciation because the agreement for lease was acquired without cost by Milliron, petitioner's transferor. If Milliron acquired the agreement for lease as a gift, petitioner is entitled to a deduction for depreciation as claimed, but if the transaction was not a gift, the determination of the Commissioner is correct. This follows from sections 204 (a) (4) and (8) of the Revenue Act of 1926, 44 Stat. 14, 15, 26 USCA §§ 935 (a) (4, 8). Under section 204 (a) (8), 26 USCA § 935 (a) (8) the basis for exhaustion and depreciation is the same as it would be in the hands of the transferor of the property; and section 204 (a) (4), 26 USCA § 935 (a) (4) pro-

vides that if the property was acquired by gift before December 31, 1920, the basis shall be the fair market value of the property at the time of acquisition. Petitioner contends that Milliron received the agreement for lease as a gift from Faris and Walker on November 2, 1920, at which time it had a fair market value of $640,000, and that therefore the foregoing sections apply and the basis for exhaustion and depreciation is $640,000. We cannot agree with the contention that Milliron acquired the agreement for lease from Faris and Walker as a gift. It is fundamental that if a consideration is involved the transaction cannot be a gift. Noel v. Parrott (C. C. A. 4) 15 F.(2d) 669; Ellerson v. Grove (C. C. A. 4) 44 F.(2d) 493; Schumacher v. United States (Ct. Cl.) 55 F.(2d) 1007; 28 C. J. 621. The letter of November 2, 1920, from Faris and Walker to Milliron clearly states a consideration, as follows: "In consideration of your assuming all of the duties and obligations imposed upon us by reason of our contract to execute a lease * * * we hereby give and assign to you all our right, title and interest in said agreement, it being understood that you are to assume all of our obligations either directly or indirectly imposed as a result of this agreement."

In Milliron's letter of the same day to Faris and Walker accepting the "gift," he agreed to assume and discharge all the obligations of his assignors, as follows: "I agree to assume all your obligations thereunder and to hold you free and clear of any liabilities as a result thereof." The assumption by Milliron of the burdens of the contract constituted a consideration for the transfer and precludes the notion of a gift. Jameson v. Shepardson, 83 Cal. App. 596, 257 P. 157.

 The remaining question is whether the rentals from the property from January 2, 1921, to May 18, 1921, constitute taxable income to petitioner. During that period the property was under lease to Faris and Walker from Milliron, as lessor. The rentals for that period amounted to $56,854.91, and were turned over to petitioner by Milliron on May 18, 1921, when petitioner acquired the agreement for lease. Petitioner contends that this sum constitutes part of its invested capital for 1921, and is not taxable as income. This claim was first raised after the Board had filed its findings of fact and opinion, when the Commissioner and petitioner submitted recomputations of

the deficiencies under rule 50 of the Board's Rules of Practice. The Commissioner moved to disallow depreciation on the lease during the period from January 2, 1921, to May 18, 1921, and petitioner moved to exclude the rentals for that period from its taxable income and include that amount in its invested capital for 1921. Since this was a new issue, and as "New issues, other than those relating to computation, cannot be raised upon computation of the tax under Rule 50" [Davison v. Commissioner (C. C. A. 2) 60 F.(2d) 50, 52], the Board properly denied the motions. See, also, Bankers' Coal Co. v. Burnet, 287 U. S. 308, 53 S. Ct. 150, 77 L. Ed. 325.

Affirmed.