STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

FILED
May 16, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**THE CITY OF CHARLESTON,**
**Defendant Below,**
**Petitioner,**

**vs.)  No. 21-0776** (Kanawha County 18-C-1495)

**ROBERT ROMAINE,**
**Plaintiff Below,**
**Respondent.**

## MEMORANDUM DECISION

Petitioner, The City of Charleston, by counsel, Michael D. Dunham and Karen T. McElhinny, appeals the Circuit Court of Kanawha County's grant of summary judgment against it.  Respondent, Robert Romaine, filed a response, by counsel, Scott H. Kaminski.  Additionally, the amicus curiae West Virginia Municipal League, by counsel, Michael W. Taylor and Samuel M. Bloom, filed a brief.  Petitioner filed a reply and oral argument was held before this Court on March 22, 2023.

This Court has considered the parties' briefs, the amicus curiae brief, the record on appeal, and the oral argument of the parties.  From that review, the Court finds that the circuit court erred in granting summary judgment in favor of Respondent.  Accordingly, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for reversal by memorandum decision.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Respondent brought this declaratory judgment action seeking an order declaring that Petitioner is responsible to "make needed repairs" to the portion of Shannon Place located outside the corporate limit of the City of Charleston, West Virginia.  After engaging in discovery, the parties filed cross-motions for summary judgment.  In granting summary judgment in favor of Respondent, the circuit court found, "[i]t is not disputed that the portion of Shannon Place in front of Plaintiff's home is outside the city limits, leaving at least part of the area in need of repair outside of city limits."

Despite finding the relevant portions of Shannon Place to be outside the Charleston city limits, the circuit court found that pursuant to West Virginia Code § 17-1-3 (2013), Petitioner, through its actions, assumed responsibility for Shannon Place.  That Code section provides, in pertinent part:

1

Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not.

*Id.*

Applying this statute, the circuit court found that Shannon Place was a public street, having "been open to the public and used by various delivery and service providers." The circuit court further found Petitioner had expended money and labor on Shannon Place through Petitioner's "collect[ion of] fees and taxes, and in return has provided services to the residents of Shannon Place." Specifically, the circuit court found these services to be "refuse collection, recycling, and road maintenance from" Petitioner. The circuit court further found that Petitioner had sporadically performed garbage collection, street sweeping, snow removal and ice control, tree limb removal services, sewer services, and had driven a recycling truck on Shannon Place.

However, Petitioner demonstrated that it did not officially authorize any maintenance to Shannon Place because the street was located outside Petitioner's corporate boundary. This was shown by a memorandum from David Alvis, Planning Director, to Mark Holstein, Public Works Director, dated January 8, 1997, in which Alvis clarified to Holstein the status of Shannon Place: "The last 350' of street down to the turning area is outside the City, even though all the houses on the left side of the street are in the City." This evidence is buttressed by affidavits of Petitioner's employees attached to its Motion for Summary Judgment, all of which consistently state that the portion of Shannon Place at issue in this appeal is located outside the City limits. These affidavits were submitted by Brent Webster, Director of Public Works, William "Bill" Tate, Deputy Director of the Street Department, and Chris Knox, City Engineer. Webster and Tate both emphasize that no maintenance on Shannon Place was authorized outside the City limits. Knox stated Petitioner had no right of way for the street outside the City limits.

After the circuit court granted Respondent's motion, Petitioner appealed to this Court, arguing the circuit court erred in three respects. First, the circuit court erred in finding Petitioner responsible for maintaining a street located outside its jurisdictional limits. Second, the circuit court erred in determining that the street at issue is a public street. Third, the circuit court erred in not joining indispensable parties.

## II. STANDARD OF REVIEW

The entry of both a declaratory judgment and summary judgment are reviewed *de novo*. *See* Syl. Pts. 1 & 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995).

&ldquo;&ldquo;&ldquo;Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.&rdquo; Syl. pt. 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).&rsquo; Syl. pt. 3, *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co. of America*, 194 W.Va. 186, 460 S.E.2d 1 (1994).&rdquo;

Syl. pt. 3, *Davis v. Foley*, 193 W.Va. 595, 457 S.E.2d 532 (1995). Mindful of our standard of review, we now discuss the issues raised in this appeal.

## III. ANALYSIS

We believe the issue of whether the provisions of West Virginia Code § 17-1-3 require a city to assume responsibility for a street located outside its corporate limit is dispositive of this appeal. This Court has been called to examine the applicability of West Virginia Code § 17-1-3 on numerous occasions. We have held that &ldquo;[t]he mere use by the public of a private alley in common with the owners of the alley does not show a dedication thereof to public use, or vest any right in the public to the way.&rdquo; Syl. Pt. 2, *MacCorkle v. City of Charleston*, 105 W. Va. 395, 142 S.E. 841 (1928). In *Wilson v. Seminole Coal, Inc.*, 175 W. Va. 518, 336 S.E.2d 30 (1985), we thoroughly discussed West Virginia Code § 17-1-3 and how public roads come into existence:

West Virginia recognizes three ways in which a roadway may become a public road: (1) condemnation, (2) dedication, and (3) public use coupled with official recognition that the road is public, as by maintenance. *Reger v. Weist*, 172 W.Va. 738, 310 S.E.2d 499 (1983); *State ex rel. Riddle v. Department of Highways*, 154 W.Va. 722, 179 S.E.2d 10 (1971). No one contends that the road in controversy became a public road by condemnation or dedication. The appellee's theory of the case has been that the road became a public road by operation of W.Va. Code, 17-1-3, which provides in part that &ldquo;[a]ny road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not.&rdquo;

It is clear that public use alone is not enough to establish the public nature of a road under W.Va. Code, 17-1-3. In addition, &ldquo;public moneys or labor *duly authorized* by a public

3

agency or official empowered to maintain, repair or accept such road must be expended on it." *State Road Comm'n v. Oakes*, 150 W.Va. 709, 716, 149 S.E.2d 293, 298 (1966). *See also State ex rel. Riddle v. Department of Highways*, *supra*.

175 W. Va. at 519, 336 S.E.2d at 31 (emphasis added). Occasional performance of unauthorized maintenance work does not satisfy the provisions of West Virginia Code § 17-1-3:

> In order that a road, by virtue of Section 3, Article 1, Chapter 17, Code, 1931, shall be conclusively presumed to be established as a public road, it must have been used by the public for a period of ten years or more and public moneys or labor, duly authorized by a public agency or official empowered to maintain, repair or accept such road, must be expended on it; and the occasional expenditure of public money or the occasional performance of public labor on such road, which is not so authorized, even though such road has been used by the public for ten years or more, does not satisfy the requirements of the statute or render effective the statutory presumption of its establishment as a public road.

Syl. Pt. 3, *Baker v. Hamilton*, 144 W. Va. 575, 109 S.E.2d 27 (1959).

> In previous cases, we have held that isolated and sporadic instances of public maintenance will not suffice to meet the requirements of W. Va. Code [§] 17-1-3. *See, e.g., Teter v. Teter*, 163 W.Va. 770, 260 S.E.2d 270 (1979) (per curiam); *Blamble v. Harsh*, 163 W.Va. 733, 260 S.E.2d 273 (1979) (per curiam); *State ex rel. Riddle v. Department of Highways*, *supra; Baker v. Hamilton*, 144 W.Va. 575, 109 S.E.2d 27 (1959). In many of these cases, we have emphasized the lack of authorization by a public official responsible for making maintenance decisions as much as, if not more than, the quantum of work involved, but even authorized work can fail to satisfy the requirements of W. Va. Code [§] 17-1-3, where it is very infrequent. *See Monk v. Gillenwater*, 141 W.Va. 27, 87 S.E.2d 537 (1955) (single scraping of road); *MacCorkle v. City of Charleston*, 105 W.Va. 395, 142 S.E. 841 (1928) (some grading, draining, and filling of mudholes).

*Wilson*, 175 W. Va. at 520, 336 S.E.2d at 32 (footnote omitted noting other states "have held that occasional maintenance is not enough to meet the requirements of their statutes.").

4

There was no dedication of public use of Shannon Place by Petitioner. Additionally, Petitioner's expenditure of funds on Shannon Place was both sporadic and unauthorized.

Further, the street in question is located outside the corporate boundary of the City of Charleston, where the city not only lacks an obligation to maintain it but, indeed, except in certain circumstances, lacks legal authority to act:

> A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied.

Syl. Pt. 2, *State ex rel. City of Charleston v. Hutchinson*, 154 W. Va. 585, 176 S.E.2d 691 (1970). As a prerequisite to incorporation, a city must distinctly define its corporate limits. *See* W. Va. Code §8-2-1(a)(5) (2001). The City of Charleston is so distinctly defined.[1]

Because a city's boundaries are distinctly defined, a city can only act outside its corporate limit when the Legislature has expressly granted that authority. *See Darnall v. Bd. of Park Comm'rs of City of Huntington*, 124 W. Va. 787, 794, 22 S.E.2d 542, 546 (1942) ("Plainly, as we think, the legislature intended to limit the governmental power, if we may use that term, of the Board of Park Commissioners to the City of Huntington, with the additional and incidental power to acquire real estate lying outside of the city for purposes connected with the powers expressly conferred."); *Bernard v. City of Bluefield*, 117 W. Va. 556, 559, 186 S.E. 298, 299 (1936) (The City of Bluefield was authorized to act outside its corporate limit: "The act further provides that for all of the purposes thereof, the municipal corporations shall have jurisdiction for ten miles outside their corporate limit."); *Benwood-McMechen Water Co. v. City of Wheeling*, 121 W. Va. 373, 374, 4 S.E.2d 300, 302 (1939) (The City of Wheeling, pursuant to statutory authority, "furnished water to persons and corporations located outside its limits, and for this service made an additional charge of twenty-five per cent over that imposed upon customers within the city.").

---

[1] The City of Charleston was originally chartered as "Charles Town" in 1794. *See W. Va. Blue Book* (Clark S. Barnes, Senate Clerk), 2015-2016, p. 965. Its name was changed to "Charleston" in 1818. *See* 1817-1818 Va. Acts 160. The "corporate limits of the city" were first described by our Legislature in 1875. *See* 1875 W. Va. Acts 47.

The Code of the City of Charleston, West Virginia contains the City's Charter. This document further describes the corporate limits but has been rendered obsolete by subsequent annexations. *See* Charleston, W. Va., Mun. Code, Charter § 2 (2003).

Absent specific statutory authority, we have held that a city's power to act is constrained by its corporate limit:

> The exercise of municipal powers, by proper construction, is confined to the territorial limits of the municipality, and are (1) such as are granted by express words; (2) those fairly implied or incident to those expressly granted; and (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.

Syl. Pt. 1, *Min. Cnty. Ct. v. Town of Piedmont*, 72 W. Va. 296, 78 S.E. 63 (1913). We discussed this issue in *Hyre v. Brown*, 102 W. Va. 505, 135 S.E. 656 (1926). In *Hyre*, the City of Ravenswood, West Virginia, had an electric power plant and constructed electric lines outside its corporate boundary which fell to the ground and electrocuted a person who came in contact with them. *Id.*, 102 W. Va. at 506, 135 S.E. at 657. Suit was brought by the decedent's intestate heirs against the City. *See id.* This Court reasoned that "[i]t is very well established that a municipality without statutory authority, express or implied, cannot exercise powers beyond its corporate limits." *Id.*, 102 W. Va. at 510. 135 S.E. at 658. From that conclusion, we crafted two syllabus points:

> A municipal corporation possesses and can exercise only the following powers: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the accomplishment of the declared objects and purposes of the corporation-not simply convenient, but indispensable. Dillon on Mun. Corp. (5th Ed.) § 237.

> Where a fair, substantial, reasonable doubt exists as to whether such corporation is possessed of a power, the power must be denied.

Syl. Pts. 2 & 3, *Hyre*.

It is true that the Legislature has granted limited authority for a city to act *outside* its corporate boundary when necessary to exercise powers and authority it possesses *within* its city limits. *See* W. Va. Code § 8-12-19 (1969). [2] However, it is clear

---

[2] W. Va. Code § 8-12-19 provides:

(continued . . .)

from the record in this matter that Petitioner did not authorize the exercise of such power and authority.

The circuit court erred because Petitioner never dedicated Shannon Place to public use. Petitioner's sporadic and periodic driving of vehicles for refuse collection, recycling, road maintenance, street sweeping, snow removal, and tree limb removal, coupled with the provision of sewer services does not satisfy the requirements of West Virginia Code § 17-1-3. Indeed, of the circuit court's findings of Petitioner's expenditure of public funds, only road maintenance (of which both street sweeping and snow removal are a part) constituted an expenditure on the actual maintenance of the street. In any event, as reflected by the January 8, 1997 memorandum noted above, these activities were not authorized by Petitioner. Finally, any activities performed on Shannon Place outside the corporate boundary of the City were unnecessary to the exercise of Petitioner's authority within the city limits. Accordingly, the circuit court erroneously concluded that West Virginia Code § 17-1-3 required Petitioner to maintain the relevant portion of Shannon Place and, thus, its grant of summary judgment in favor of Respondent was in error.

## IV. CONCLUSION

For the foregoing reasons, we find the circuit court erred and we reverse and remand this matter to the circuit court for further action consistent with this decision.

---

Wherever the powers and authority granted in this chapter cannot be reasonably and efficiently exercised by confining the exercise thereof within the corporate limits of the municipality, *the powers and authority of the municipality shall extend beyond the corporate limits to the extent necessary to the reasonably efficient exercise of such powers and authority within the corporate limits.* Such powers and authority, unless otherwise provided in this code or elsewhere in law, shall not, however, extend more than one mile beyond the corporate limits, and such powers and authority shall not extend into the corporate limits of another municipality without the consent of the governing body thereof.

(emphasis added). Similarly, the Code of The City of Charleston, West Virginia provides, "[f]or all such purposes, except that of taxation and for purposes otherwise limited by this [Charter], the council shall have jurisdiction for one mile beyond the corporate limit." Charleston, W. Va., Mun. Code, Charter § 7, in part (2003). Thus, if necessary to exercise power and authority within a city, a city may act without its corporate boundary. No party to this action cited to the provisions of either the Charleston City Code or West Virginia Code § 8-12-19.

7

Reversed and remanded.

**ISSUED:** May 16, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

8